IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| K.C. Langford, | ) | Case No. 9:20-cv-01298-DCC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **AMENDED ORDER** |
| | ) | |
| Warden Donnie Stonebreaker, Jr., | ) | |
| Warden, Evans Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, proceeding through counsel, is seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Molly H. Cherry for pre-trial proceedings and a Report and Recommendation ("Report").  On May 22, 2024, Respondent filed a Motion for Summary Judgment.  ECF No. 51.  Petitioner filed a Response in Opposition, Respondent filed a Reply, and Petitioner filed a Sur-Reply.  ECF Nos. 54, 55, 59.  On July 31, 2024, the Magistrate Judge issued a Report recommending that the Motion be denied and the Petition be granted.  ECF No. 60.  Respondent filed objections, and Petitioner filed a Reply.  ECF Nos. 61, 62.

## APPLICABLE LAW

### *Standard of Review*

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

### *Habeas Corpus*

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *Id*.  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id*.

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-

3

27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a post-conviction relief ("PCR") application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

4

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 298 (1989).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice,

5

the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

The Magistrate Judge provided a thorough recitation of the relevant facts and applicable law, which the Court incorporates into this Order by reference. The Court's review of this matter has been de novo and for clear error as set out below.

### Procedural Bar

The Magistrate Judge determined that Respondent waived any assertion of procedural bar. ECF No. 60 at 18–22. Neither party has objected to this portion of the Report. Therefore, upon review for clear error, the Court agrees with the recommendation of the Magistrate Judge.

***Grounds One and Two***

In Grounds One and Two, Petitioner raises violations of his speedy trial rights. He contends that his case was not called to trial for nearly two years and that solicitor docket control violated his rights. The Magistrate Judge determined that the Supreme Court of South Carolina's finding that Petitioner's rights were not violated was based on an unreasonable determination of facts and an unreasonable application of federal law. ECF No. 60 at 22–36.

In the order ruling on Petitioner's direct appeal, the Supreme Court of South Carolina found as follows:

> Langford also contends the State's dilatory practices in calling his case deprived him of his right to a speedy trial.[7] The Sixth Amendment to the United States Constitution provides, in part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const, amend. VI. Similarly, the South Carolina Constitution guarantees that "[a]ny person charged with an offense shall enjoy the right to a speedy . . .

---

[7] We reject the State's argument that this issue is not preserved for review due to Langford's failure to renew his motion to dismiss when his case was called for trial. In its May 2010 order denying Langford's original motions, the court required the State to try the case within nine months. It then said Langford could renew his motion to dismiss at that time if the State failed to do so. Because nine months had not yet passed when the case was tried, it would have been futile for Langford to raise the issue again. *See State v. Pace*, 316 S.C. 71, 74, 447 S.E.2d 186, 187 (1994) (finding appellant did not waive an objection by not presenting it to circuit court because it would have been futile to do so).

trial." S.C. Const, art. I, § 14. The main goals of this right are to prevent undue pretrial incarceration, minimize the anxiety stemming from public accusation of a crime, and limit the possibility of long delays impairing an accused's defense. *State v. Waites*, 270 S.C. 104, 107, 240 S.E.2d 651,653 (1978).

The Supreme Court of the United States has deemed this right "generically different from any of the other rights enshrined in the Constitution for the protection of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972). This is due in large part to the reality that "[d]elay is not an uncommon defense tactic" and "deprivation of the right to a speedy trial does not per se prejudice the accused's ability to defend himself." *Id*. at 521. More important, however, is the vagueness of this right, which makes it nearly impossible to determine when it has been violated. Id. Indeed, the various procedural safeguards built into the criminal process require that it "move at a deliberate pace." *United States v. Ewell*, 383 U.S. 116, 120 (1966). Thus, "there is no fixed point . . . when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial." *Barker*, 407 U.S. at 521.

Accordingly, "[t]he right to a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." *Beavers v. Haubert*, 198 U.S. 77, 87 (1905). Stated differently, "[a] speedy trial does not mean an immediate one; it does not imply undue haste, for the [S]tate, too, is entitled to a reasonable time in which to prepare its case; it simply means a trial without unreasonable and unnecessary delay." *Wheeler v. State*, 247 S.C. 393, 400, 147 S.E.2d 627, 630 (1966). Because of the vagaries of this unavoidably ad hoc inquiry, the Supreme Court has acknowledged that it "can do little more than identify some of the factors" for courts to examine. *Barker*, 407 U.S. at 530. These factors include the length of the delay, the reason for it, the defendant's assertion of his right to a speedy trial, and

any prejudice he suffered.[8] *Id*.; *see also Waites*, 270 S.C. at 107, 240 S.E.2d at 653 (recognizing the same factors apply under South Carolina law).

The Supreme Court has counseled further that none of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. Instead, they are all related and must be considered along "with such other circumstances as may be relevant." *Id*. Thus, the Supreme Court created a balancing test which is a rejection of "inflexible approaches" and weighs "the conduct of both the prosecution and the defense." *Id*. at 529-30. If a court concludes that this right has been violated, dismissal of the charges "is the only possible remedy." *Id*. at 522. A court's decision on whether to dismiss on speedy trial grounds is reviewed for an abuse of discretion. *See State v. Edwards*, 374 S.C. 543, 571, 649 S.E.2d 1 12, 126 (Ct. App. 2007) (applying abuse of discretion standard to speedy trial claim), *rev'd on other grounds*, 384 S.C. 504, 682 S.E.2d 820 (2009); *see also State v. Redding*, 561 S.E.2d 79, 80 (Ga. 2002) (noting the inquiry is whether court abused its discretion under *Barker*). "An abuse of discretion occurs when the trial court's decision is based upon an error of law or upon factual findings that are without evidentiary support." *Fields v. J. Haynes Waters Builders, Inc*., 376 S.C. 545, 555, 658 S.E.2d 80, 85 (2008)

We begin our analysis with the "triggering mechanism" of a speedy trial claim, which is the length of the delay. *Barker*, 407 U.S. at 530. We should not even examine the remaining factors "[u]ntil there is some delay which is presumptively

---

[8] The circuit court did not cite to *Barker* or explicitly apply any of these factors. However, the court's analysis largely tracks the substance of the test, and no party has contended the court did not use the proper legal framework when ruling on Langford's motions.

prejudicial." *Id*. The clock starts running on a defendant's speedy trial right when he is "indicted, arrested, or otherwise officially accused," and therefore we are to include the time between arrest and indictment. *United States v. MacDonald*, 456 U.S. 1, 6 (1982). The Supreme Court was quick to remind in *Barker*, however, that even the length of time necessary to trigger the full inquiry "is necessarily dependent upon the peculiar circumstances of the case." 407 U;S. at 530-31. Thus, a simple prosecution for ordinary street crime may have a lower threshold for a presumptively prejudicial delay than a more complex conspiracy case. *Id*. at 531; *see also id*. at 531 n.31 (suggesting that a delay of nine months could have been presumptively prejudicial in a case that depended on eyewitness testimony (citing *United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir. 1970))).

In the case before us, Langford's speedy trial clock began when he was arrested on October 3, 2008, and ran until he was tried twenty-three months later on September 7, 2010. Moreover, while the charges against him were serious, the factual proof was not complicated. Thus, this length of time is presumptively prejudicial and triggers the remaining *Barker* inquiry. *See Waites*, 270 S.C. at 108, 204 S.E.2d at 653 (holding a two-year-and-four-month delay in a prosecution for assault and battery of a high and aggravated nature and for pointing and presenting a firearm implicated the rest of the *Barker* analysis); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."); *Brooks v. State*, 674 S.E.2d 871, 873-74 (Ga. 2009) (finding a nineteen-month delay presumptively prejudicial in trial for murder, aggravated assault, and firearms offenses).

Turning to the second element, the Supreme Court has stated that "different weights should be assigned to different reasons" for the delay. *Barker*, 407 U.S. at 531. A deliberate attempt by the State to delay the trial as a means of impairing

the accused's ability to defend himself "should be weighted heavily against the government." *Id*. Neutral reasons, which could include overcrowded dockets or negligence, are "weighted less heavily" but still count against the 'State because it bears the ultimate responsibility for these circumstances. *Id*.; *see also State v. Pittman*, 373 S.C. 527, 549, 647 S.E.2d 144, 155 (2007) ("The ultimate responsibility for the trial of a criminal defendant rests with the State."). Delays occasioned by the defendant, however, weigh against him. *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009). This is not only in accord with the reality that delay may be a defense tactic, but it is also a recognition that a defendant should not be able to procure a dismissal of the charges against him due to delays he caused. *See id*.

The State advances two different reasons for the delays in Langford's prosecution. First, it argues that the initial twenty-month delay in indicting him was due to its inability to have a "meaningful" conversation with the victims because it could not find an interpreter. Although we are not persuaded the State used its best efforts to secure an interpreter, there is no evidence that it intentionally tarried in finding one. At most, the State was negligent, and this is a neutral reason for delay which does not weigh heavily against it.

Next, the State contends the final four-month delay in trying Langford, running from May 2010 to September 2010, was the result of Langford coercing Phillips to not testify. From our review of the record, there is evidence that Langford and his co-defendant persuaded Phillips to remain silent. So long as he did so, he would be unavailable for cross-examination. Thus, the State would be unable to use Phillips' original statement as evidence against Langford. *See Bruton*, 391 U.S. at 126. The loss of this crucial piece of evidence therefore effectively gutted the State's case on the day of trial. The State consequently needed to first procure a waiver of Phillips' right to remain silent, and then it could try Langford using the statement. Because Phillips' attorney was not ready

11

to proceed during that term of court, however, a continuance was required for this to happen.[9] From that point on, the State moved with reasonable haste given the few General Sessions terms scheduled for Edgefield County during that time. We agree with the circuit court that the delays already incurred are troubling, but we cannot ignore the fact that this additional delay is the product of Langford's efforts to spoil the State's evidence. Therefore, we will not count it against the State. *See United States v. Loud Hawk*, 474 U.S. 302, 316 (1986) (holding a defendant who causes delays in his trial "should not be able upon return to the district court to reap the reward of dismissal for failure to receive a speedy trial").

The third factor in the *Barker* analysis is the defendant's assertion of his right to a speedy trial. While Langford first filed what seems to be a pro se speedy trial motion in June 2009, the record suggests that he never sought a ruling on it until the May 2010 hearing. Moreover, while Langford did file a *pro se* motion for a speedy trial/motion to dismiss days after the court issued its May 2010 order, it was never ruled upon and he never renewed his motion when the case was called for trial. Although it may have been futile for him to raise the issue again from an error preservation standpoint, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *See Barker*, 407 U.S. at 532.

---

[9] Langford's argument that the State simply could have redacted Phillips' references to him in the statement to avoid Bruton misses the point. Phillips was the key prosecution witness, and his testimony was essential to the State's case. Holding that the State was required to forego the use of Phillips' statement against Langford without consideration of why Phillips changed his mind would allow Langford to benefit from his tampering with the State's star witness.

Finally, we must consider the prejudice Langford suffered. The Supreme Court has identified three different types of prejudice the right to a speedy trial seeks to prevent: (1) oppressive pre-trial incarceration; (2) anxiety stemming from being publicly accused of a crime; and (3) the possibility that the accused's defense will be impaired due to the death or disappearance of witnesses or the loss of memory with the passage of time. *Id*. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*.

Langford was in jail for nearly two years pending trial. "The time spent in jail awaiting trial has a detrimental impact on the individual" through its attendant job loss, disruption of family life, and encouragement of "idleness." *Id*. While we are cognizant of not minimizing the deleterious effects of lengthy pre-trial incarceration, the two-year delay in bringing this case to trial does not amount to a constitutional violation in the absence of any actual prejudice to Langford's case.[10] *See State v. Kennedy*, 339 S.C. 243, 250, 528 S.E.2d 700, 704 (Ct. App. 2000) ("While Kennedy may have been slightly prejudiced by the twenty-six month pretrial incarceration, the more important question is whether he was prejudiced because the delay impaired his defense."). To that end, Langford has not demonstrated how his own defense was prejudiced by the delay. Although he does argue the final delay enabled the State to secure Phillips' testimony and thereby bolster its case against him, he fails to recognize that the State only had to do so because of his interference. Moreover, he cannot point to any evidence of anxiety caused by the stigma of being accused of these crimes.

---

[10] While extreme delays may warrant relief based solely on pre-trial incarceration, this case has not crossed that threshold. *See Doggett*, 505 U.S. at 657 ("[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice.").

> Looking at these factors and the case as a whole, and taking into account the balance of the State's interests and Langford's, we do not believe the circuit court abused its discretion in finding Langford was not denied a speedy trial in the constitutional sense.

App. 777–82.  Here, it is uncontested that the Supreme Court of South Carolina applied the proper standard; the disagreement is over the application of the facts to the relevant law.

The Magistrate Judge determined that the threshold inquiry is satisfied and that every *Barker*[1] factor weighs in favor of Petitioner; accordingly, she further determined that the Petition should be granted as to these Grounds.  Respondent objects in part.  The Court will proceed through the *Barker* analysis and address Respondent's objections as they arise.

Neither party has objected to the Magistrate Judge's analysis of the threshold inquiry into the length of delay.  As stated by the Magistrate Judge, the first factor serves two functions—as a triggering mechanism and as one of the four factors to be considered after a *Barker* analysis is triggered.  Here, upon review for clear error, the Court finds that the delay was unquestionably of such a length to trigger the four-part *Barker* analysis.

---

[1] *Barker v. Wingo*, 407 U.S. 514 (1972).

14

With respect to length-of-delay as the first *Barker* factor, neither party has objected to the Magistrate Judge analysis. Therefore, upon review for clear error, the Court agrees with the Magistrate Judge that this factor weighs in favor of Petitioner.

The Magistrate Judge found that the second *Barker* factor—reason for delay—also weighed in favor of Petitioner. She properly articulated that the reason for delay could be characterized as valid, improper, or neutral. *See Barker*, 407 U.S. at 531. The Magistrate Judge determined that the Supreme Court of South Carolina's reasoning for finding Petitioner was, at least partially, at fault for the delay was unreasonable. Respondent objects to a portion of the Magistrate Judge's analysis in this regard.

The Supreme Court of South Carolina determined that there were two reasons for delay in this case. First, there was an initial 20-month delay ostensibly due to the State's failure to find a Chinese interpreter. The Supreme Court of South Carolina found that this was the result of the State's negligence and not a willful disregard for Petitioner's rights; accordingly, this delay was not weighed heavily against the State. The Magistrate Judge believes that this reasoning overlooks the fact that this delay was only permitted to occur because the docket was under solicitor control. She concluded that failure to consider the effect of a solicitor-controlled docket on the 20-month delay was unreasonable. Respondent does not specifically object to this portion of the Report. Upon review for clear error, the Court finds that the 20-month delay weighs against the State and in favor of Petitioner.

15

The Supreme Court of South Carolina next considered the four-month delay. It determined that this delay was due to the actions of Petitioner because he was working to silence a State's witness. The Magistrate Judge found that this conclusion was unreasonable. She determined that there was no evidence presented in support of this allegation and that the Solicitor's belief that Petitioner was attempting to coerce a witness to decline to testify against him was insufficient to weigh this factor against Petitioner. Respondent objects to this portion of the Report. Respondent's objection centers on evidence in support given during the PCR hearing; Respondent asserts that the Magistrate Judge overlooked that evidence. ECF No. 61 at 3–5. This is a misstatement of the Magistrate Judge's analysis. The Magistrate Judge clearly found that this evidence should not be considered because it was obtained during the PCR proceedings and was not available to the Supreme Court of South Carolina in reviewing Petitioner's direct appeal. Beyond this argument, Respondent largely recites arguments raised to the Magistrate Judge that she noted were not supported by record cites and are likewise unsupported here.

Upon de novo review, the Court likewise cannot overlook the lack of support for Respondent's argument. As noted above, he cites primarily and frequently to evidence that was not before the Supreme Court of South Carolina. Moreover, while the Supreme Court of South Carolina stated that "there is evidence that Langford and his co-defendant persuaded Phillips to remain silent," no one has bothered to direct the Court to this evidence. The Court has been unable to find any support for this conclusion beyond the

16

Solicitor's unsupported arguments made during the hearing on the Motion for Speedy Trial. *See* App. 10–21. Notably, no witnesses and no exhibits were introduced during that proceeding. App. 8–9. Thus, the Court finds that there is insufficient evidence to support the Supreme Court of South Carolina's reasoning. Accordingly, as there is no evidence that Petitioner is responsible for the four-month delay, the Court is of the opinion that this portion of the delay weighs in favor of Petitioner.[2]

The Magistrate Judge next concluded that the third *Barker* factor—assertion of the speedy trial rights—weighed heavily in favor of Petitioner. ECF No. 60 at 30–32.

---

[2] In his objections, Respondent states that,

> There were also some allegations that the Petitioner was denied due process due to the docket control of the Solicitor at the time this case was called for trial. There were some allegations of 'judge shopping.' As decided by the South Carolina Supreme Court in *State v. Langford*, there was not a shred of evidence that Judge Keesley made any rulings due to any animus toward the Petitioner or any allegiance towards the State.

ECF No. 61 at 4. It is unclear what "allegations" Respondent is referring to. In the Report, the Magistrate Judge mentions that solicitor control of the docket "allowed for all of these proceedings to be in front of the same judge." ECF No. 60 at 35 n.20. The Court believes this is a reference to the possibility of abuse of discretion under a solicitor-controlled docket and a not a statement regarding the actions of the specific judge in this case. To the extent this is intended to be a specific objection to the Report, it is overruled for this reason. To the extent this is intended to remind the reader that there is no evidence Judge Keesley rendered any biased decisions, the Court agrees that there is no evidence to that effect.

Respondent does not object to this portion of the Report. Accordingly, upon review for clear error, the Court finds that this prong weighs heavily in favor of Petitioner.

The fourth and final *Barker* factor is prejudice to the defense. As noted by the Magistrate Judge, review of this factor requires analysis of three "interests of defendants which the speedy trial right was designed to protect": (1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired. *Barker*, 407 U.S. at 532. Of these three factors, the last is the most serious because "the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id.*

The Magistrate Judge determined that the Supreme Court of South Carolina reasonably determined that the first interest, while implicated by the length of Petitioner's pretrial incarceration, did not by itself establish prejudice. However, she also stated this conclusion rested on an unreasonable determination of facts. She then found that Petitioner had not pointed to any evidence in the record that the second interest established prejudice and, therefore, found that the Supreme Court of South Carolina's ruling on this interest was reasonable. With respect to the third interest, the Magistrate Judge found that the Supreme Court of South Carolina's decision was based on an unreasonable determination of facts. Specifically, the Magistrate Judge took issue with the finding that the State's delay, which allowed it to procure Alvin Phillips's testimony, was due to Petitioner's own actions.

18

Respondent objects to this recommendation on the basis that the delay in trial was due to Petitioner's own actions. ECF No. 61 at 3–4. As noted above, the undersigned is of the opinion that that the evidence in the record is insufficient to support Respondent's argument. Accordingly, this objection is overruled. Upon de novo review of this portion of the Report, and in light of the specific objections made, the Court finds that the Supreme Court of South Carolina's findings with respect to the first and third interests were unreasonable as they were based on the finding that Petitioner created the pretrial delay. The Supreme Court of South Carolina's ruling on the second interest was reasonable.[3] Accordingly, upon review of the fourth *Barker* factor, the Court finds that it weighs in favor of Petitioner.

Therefore, the Court agrees with the Magistrate Judge that the four *Barker* factors weigh in favor of Petitioner and the Supreme Court of South Carolina's ruling was an

---

[3] The undersigned is of the opinion that some words of limitation are required at this point. The ruling in this Order is limited to the facts of this action. As noted by the Magistrate Judge, the ruling on the speedy trial issue is deeply intertwined with the fact that the docket was solicitor controlled at the time. As acknowledged by the Supreme Court of South Carolina in ruling on Petitioner's direct appeal, solicitor control of the docket violates the separation of powers and is unconstitutional. App. 709. The holding in this case is also limited based upon the arguments or rather the noticeable lack of arguments in the amended motion for summary judgment and the objections. Indeed, had Respondent's objections and arguments been better presented or supported, the Court may have found in the alternative. However, the undersigned will not clean up or supplement the arguments made on behalf of the State when it has numerous counsel of record tasked with that responsibility.

unreasonable determination of facts and an unreasonable application of applicable law. The Petition is granted as to these Grounds.

***Ground Three***

In Ground Three, Petitioner raises a claim that trial counsel was ineffective for failing to investigate alibi witnesses.  Petitioner contends that he gave trial counsel the names of two people—Veronica Phillips and Vanessa Phillips—who were willing to testify as to his whereabouts on the night of the crime.  The Magistrate Judge considered this Ground on the merits and recommended granting habeas relief.  ECF No. 60 at 37–43.

In the order ruling on Petitioner's PCR application, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  App. 889–90.  The PCR court found that,

> Applicant testified his counsel should have investigated his alibi witnesses in support of his case. Veronica Phillips, whose brother testified against Applicant and his co-defendant and who was dating Applicant and has a child in common with him, testified at the PCR hearing, along with her mother, Vanessa Phillips.
>
> Veronica Phillips testified Applicant was with her in their apartment, which was about half a mile from the victim's home. She said Applicant was watching the son, who was twenty months old at the time, playing outside. Veronica confirmed she was claiming Applicant was watching toddler son play outside at approximately 10:30 at night. Veronica claimed she was asleep around 11 PM and her mother woke her up when it was time to go to work. Veronica claims she did not tell trial counsel this information because she was

20

focused on her brother at the time. Veronica confirmed she was still in contact with Applicant while he was in prison.

Vanessa Phillips, mother of Veronica Phillips and grandmother to Applicant's son, testified she also observed Applicant at the time he was allegedly committing the crime. She claims she never told anyone because no one ever asked.

Prosecutor Ervin Maye also testified at the PCR hearing. At the time of the trial, Assistant Solicitor Maye believed Veronica Phillips was possibly a co-conspirator in obstructing justice. Assistant Solicitor Maye recalled Ms. Phillips visiting her brother in jail and him going back and forth on whether he was going to testify against his co-defendants. Asst. Solicitor Maye testified he felt he would have been able to successfully cross-examine Ms. Phillips had she testified at the trial.

Trial counsel testified Applicant did not mention alibi witnesses for months leading up to the trial. Suddenly, about two weeks away from trial, Applicant offered alibi witnesses for the first time. Trial counsel believed this alibi claim to be false and believed testimony to support it would be perjured testimony. Trial counsel explained why that was not a good idea to Applicant, and Applicant did not raise the issue again.

This Court finds an alibi charge was not supported by credible evidence. Alibi means elsewhere. *State v. Robbins*, 275 S.C. 373, 271 S.E.2d 319 (1980). Normally, it is based upon proof advanced by the defendant, attempting to show the impossibility of being involved in a crime due to absence from the scene. *Id.* Having observed the testimony offered by Applicant, Veronica Phillips, Vanessa Phillips, Assistant Solicitor Maye, and Applicant's trial counsel, this Court finds, the testimony of Applicant's trial counsel credible on this issue. Additionally, Vanessa Phillips testified she was either away from Applicant or asleep during the time of the crime and that she lived very close to the victim's home. Veronica

21

Phillips provided very little detail on the time during which she saw Applicant the night of the crime. Neither of these women informed anyone of this life-changing alibi. Under these circumstances, this Court finds their alibi testimony is not credible.

Accordingly, this Court concludes Applicant has failed to meet his burden of proving counsel's performance was deficient or that he was prejudiced thereby and, accordingly, finds this allegation is denied.

App. at 891–92. The Magistrate Judge determined that this ruling was an unreasonable application of *Strickland*. First, she found that the PCR court did not discuss trial counsel's duty to investigate alibi witnesses and instead focused on whether an alibi charge was warranted under the circumstances. Neither party has objected to this portion of the Report. Accordingly, upon review for clear error, the Court agrees that the PCR incorrectly categorized this claim and did not engage in the requisite analysis.

Next, the Magistrate Judge discussed trial counsel's testimony at the PCR hearing and concluded that trial counsel did not perform any investigation into the two potential alibi witnesses. The Court's review of this portion of the Report has been de novo. In Respondent's objections, he asserts that it was a reasonable strategic decision to decline to call these witnesses at trial. ECF No. 61 at 5–6. That framing of the issue also misses the point; the issue is a lack of investigation, which neither party appears to be prepared to defend. Indeed, the Magistrate Judge provides ample caselaw in support of her conclusion that trial counsel was deficient for failing to investigate the alibi witnesses, which this Court incorporates by reference. Therefore, the Court agrees with the

22

Magistrate Judge's finding that the PCR court's ruling on this issue was an unreasonable application of federal law.

Turning to the prejudice prong, the Magistrate Judge determined that Petitioner has shown a reasonable probability that the result at trial would have been different if not for counsel's deficient performance.  Respondent contends that there were reasons that the jury could have chosen to discount the potential alibi witnesses' testimony.  Upon de novo review, the Court finds that Petitioner has failed to show resulting prejudice from trial counsel's ineffective assistance.  At the beginning of this section, the Magistrate Judge recognizes that Veronica Phillips is the mother of Petitioner's child and that Vanessa Phillips is her mother.  However, in the remainder of her discussion, the Magistrate Judge does not acknowledge that these relationships were of any significance, instead pointing out these women's connection with Petitioner's co-defendants.  While the relationships between Petitioner and the potential alibi witnesses in no way excuses trial counsel's duty to investigate, the Court finds that the omission of it presents less than the full story.  Moreover, the potential alibi witnesses testified at the PCR hearing and the PCR court determined that they were not credible and that finding is entitled to deference.  App. 892.  *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).  Under these circumstances, the Court finds Petitioner has not sufficiently established that he was

prejudiced by trial counsel's failure to investigate.[4]   Therefore, Respondent's Motion is granted and the Petition is denied as to this Ground.

**Ground Four**

In Ground Four Petitioner alleges trial counsel was ineffective for failing to obtain a certified Chinese translator.  The Magistrate Judge determined that the PCR court's decision that trial counsel was not ineffective was an unreasonable determination of facts and an unreasonable application of *Strickland*.  ECF No. 60 at 43–45.

In the order ruling on Petitioner's PCR application, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  App. 889–90.  The PCR court found that,

> Applicant argues his trial counsel should have objected to the court interpreter not being certified. The record in this case shows his attorney did in fact object, and the Court outlined the specific reasons why it was finding the interpreter qualified. (Record on Appeal p. 64, 1. 18 - p. 70,1.11.).
>
> This Court finds Applicant has failed to meet his burden of proving counsel's performance was deficient or that he was prejudiced thereby and, accordingly, finds this allegation is denied.

App. at 893.  As stated above, the Magistrate Judge determined that this ruling was an unreasonable determination of the facts and an unreasonable application of *Strickland*.

---

[4] In the ineffective assistance context, prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.*

She points to the order by Judge Maddox in Petitioner's co-defendant's PCR proceeding, which granted his PCR application on this issue. She determined that the order in Petitioner's PCR was woefully deficient and failed to fully address the claim. Respondent objects.[5]

The Court begins with a brief discussion of how the parties and the Magistrate Judge have addressed this issue. In the Petition, Petitioner raises a claim for ineffective assistance of counsel and states that "[t]rial counsel rendered deficient and prejudicial assistance of counsel by failing to obtain a certified Chinese translator." ECF No. 27 at 12. Respondent's objections frame this issue as a failure of trial counsel to object to the State's translator being uncertified, which was the issue addressed by the PCR court. ECF No. 61 at 6. The Magistrate Judge addressed trial counsel's failure to procure his own translator and his failure to sufficiently object to the qualification of the State's translator. The Court is of the opinion that Petitioner's claim, as stated in the Petition, concerns trial counsel's failure to procure his own translator. Nevertheless, the Court will address all interpretations of this claim below. Ultimately, upon review for either clear

---

[5] The Court takes this opportunity to respond to Respondent's overarching objection that the Magistrate Judge relied too heavily upon Judge Maddox's order in Petitioner's co-defendant's PCR proceeding. The Court finds it appropriate to note that it may certainly be unfair that two applicants in the same position achieve different results at PCR; however, it is the place of this Court to review the PCR court's rulings under the standard articulated in § 2254. Such a review may not produce identical results. Nevertheless, the Court finds that the Magistrate Judge's repeated reference to Judge Maddox's decision do not ultimately carry the day and she engaged in sufficient individualized analysis of Petitioner's Grounds.

error or de novo, the undersigned declines to adopt the recommendation of the Magistrate Judge.

With respect to the Magistrate Judge's finding that counsel was deficient for failing to object to the translator's qualifications or for failing to secure his own translator, the Court agrees with her analysis. There were certainly concerns with the interpreter identified at trial, including his lack of familiarity with the relevant rules and his continued conversations with the victims that were not mere translations of the attorneys' questions. A more complete objection by trial counsel would have been appropriate under the circumstances and trial counsel's failure to do so is objectively unreasonable. Further, had trial counsel retained an interpreter for the defense, he would have been informed of the substance of the conversations the State's translator had with the victims outside of his direct translations.[6]

However, the Court finds that Petitioner has failed to establish that he was prejudiced by trial counsel's failures.[7] Upon review of the trial transcript, the Court cannot

---

[6] Any claim that trial counsel should have objected on the basis that the State's translator was not certified is found as moot. Presumably, the issues that would have been cured by having a certified translator are that he would have been familiar with the relevant rules and he would have not have repeatedly said things to the victims outside of what was being translated. The Court finds that these concerns are sufficiently covered by the remaining issues.

[7] The Court further finds that the Magistrate Judge did not conduct an analysis of the prejudice prong with respect to this Ground. To the extent she relies on Judge Maddox's ruling, the Court is of the opinion that his findings as to prejudice are conclusory

discern any resulting prejudice to Petitioner arising from the interpreter's actions.  At trial, the victims stated that they were accosted by three African American men.  They did not provide any other description, including height, clothing, or hairstyle.  At one point, the co-defendant's trial counsel asked whether the hands of the perpetrators "looked something like my hands?"  App. 124.  The victim responded that they were "[d]arker than that."  *Id.*  Later in the trial, the same victim stated that all of the perpetrators' hands were darker than co-defendant's trial counsel's hands "[a]t nighttime, especially at nighttime."  App. 125.  Given these extremely generic descriptions, the Court cannot find that trial counsel's failure to either procure an interpreter for the defense or his failure to sufficiently object to the qualification of the State's interpreter was prejudicial to the outcome of the trial or to the success of Petitioner's post-trial proceedings.  Accordingly, the Motion for Summary Judgment is granted as to this Ground.

### *Ground Five*

In Ground Five, Petitioner raises a claim that trial counsel was ineffective for failing to object to Investigator Roosevelt Young's testimony at trial.  The Magistrate Judge found that the PCR court's ruling was an unreasonable determination of facts and an unreasonable application of federal law.   ECF No. 60 at 45–48.

---

and insufficient to support a finding of prejudice under the standards applicable to § 2254 actions.

In the order ruling on Petitioner's PCR application, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  App. 889–90.  The PCR court found that,

> Applicant next argues his counsel should have objected on the basis of hearsay to witness Detective Roosevelt's testimony. The record shows the State did not call Detective Roosevelt; instead, Applicant's co-defendant was the one to call Detective Roosevelt to the stand. (Record on Appeal, p. 297.) Applicant's co-defendant used Detective Roosevelt's testimony to present the jury information about how the investigation ended up focusing on Applicant and his co-defendant. Applicant's co-defendant used Detective Roosevelt's testimony to show an alleged informant who had a pending legal problem called Detective Roosevelt and offered information on Applicant and his co-defendants. (Record on Appeal, pp. 297- 307.) "[A]n out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." State v. Brown. 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994).

> Thus, Applicant has failed to establish any prejudice in Detective Roosevelt's testimony. This Court finds Applicant has failed to meet his burden of proving counsel's performance was deficient or that he was prejudiced thereby and, accordingly, finds this allegation is denied.

App. at 894–95.  The Magistrate Judge found that the PCR court erred in finding trial counsel was not ineffective for failing to object to Investigator Young's testimony because it constituted double hearsay and because his testimony about police informant Joseph Patrick Stevens's statements were inadmissible under the Confrontation Clause. Accordingly, she determined that there were multiple reasons for trial counsel to object

28

and the PCR court's contrary finding was unreasonable.  In his objections, Respondent only objects to the Magistrate Judge's finding that the statements by Investigator Young constituted hearsay because the statements were not introduced for the truth of the matter asserted.  ECF No. 61 at 6.

Upon review for clear error, the Court agrees with the Magistrate Judge's analysis that Investigator Young's testimony about Mr. Stevens's statement violated Petitioner's rights under the Confrontation Clause.  Therefore, the PCR court's holding that trial counsel had no reason to object to the statements is unreasonable.  Further, upon de novo review, the Court agrees that Investigator Young's statements were double hearsay and, therefore, objectionable.  Failure to object was ineffective assistance of counsel and the PCR court's holding to the contrary is unreasonable.

Turning to whether the error was prejudicial to Petitioner, the Magistrate Judge determined that the statements by Investigator Young were certainly prejudicial and featured prominently in the State's closing argument.  Respondent does not specifically object to the Magistrate Judge's finding as to prejudice.  Nevertheless, the Court finds, upon review for clear error or de novo, that the statements were prejudicial to Petitioner's case, particularly in light of the lack of any forensic evidence tying Petitioner to these crimes.  As Petitioner has met his burden of showing a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different, the Motion for Summary Judgment is denied, and the Petition is granted as to this Ground.

### Grounds Six and Seven

In Grounds Six and Seven, Petitioner raises claims of ineffective assistance of PCR appellate counsel. In the Response in Opposition to the Motion for Summary Judgment, Petitioner states that these Grounds are moot. ECF No. 54 at 31. The Magistrate Judge acknowledges that Petitioner appears to have abandoned these claims and does not address them further. Neither party has objected to this portion of the Report. Accordingly, upon review for clear error the Court agrees that these claims have been abandoned. Therefore, the Motion for Summary Judgment is found as moot as to its arguments on Grounds Six and Seven.

### Ground Eight

In Ground Eight, Petitioner argues that trial counsel was ineffective for failing to object to improper bolstering. The Magistrate Judge considered the claim pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). She determined that PCR counsel was deficient for failing to raise this issue and that the claim has some merit but that Petitioner had not shown that the comments he identified "so infected the trial with unfairness as to made the resulting conviction a denial of due process." ECF No. 60 at 48–55 (quoting *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997)). She therefore determined that Petitioner had not established that trial counsel was ineffective in failing to object to the comments and that the comments did not rise to the level of a denial of due process such that Petitioner could establish prejudice. The Magistrate Judge, therefore, recommended denying Ground Eight.

30

In his objections, Respondent states that "[t]he U.S. Magistrate also claims that the Solicitor unlawfully bolstered the credibility of the informant that spoke to Investigator Young. The Respondent argues that since questions during direct and cross examination of Investigator Young, as well as closing arguments, were made to cast doubt on the integrity of the confidential informant being a 'good Samaritan' was not bolstering or vouching." ECF No. 61 at 6. Upon de novo review of this portion of the Report, the Court overrules this objection for the reasons given by the Magistrate Judge. The Court further notes that the outcome of this specific issues does not control the outcome of Ground Eight.

Neither party has objected to the remainder of the Magistrate Judge's analysis of this Ground, including the ultimate recommendation. Accordingly, upon review for clear error, the Court agrees with the recommendation of the Magistrate Judge. The Petition is denied as to Ground Eight.

## CONCLUSION

Therefore, the Court agrees in part and respectfully declines to agree in part with the recommendations of the Magistrate Judge. The Motion for Summary Judgment is **GRANTED in part, DENIED in part, and FOUND as MOOT in part**. The Motion for Summary Judgment is denied as to Grounds One, Two, and Five. The Motion for

Summary Judgment is granted as to Grounds Three, Four, and Eight.[8]  The Motion for Summary Judgment is **FOUND as MOOT** as to Grounds Six and Seven.

The Petition is **GRANTED** as to Grounds One, Two, and Five and a writ of habeas corpus is **GRANTED**.  Petitioner's subject convictions and sentences are vacated, and the case is remanded to the Edgefield County Court of General Sessions for proceedings consistent with the above findings within 60 days.  The judgment of the Court is **STAYED** for 30 days to allow for an appeal.

## <u>CERTIFICATE OF APPEALABILITY</u>

The governing law provides that:

> (c) (2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

> (c) (3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the undersigned

---

[8] The Court notes that Ground Eight was not raised in the Motion for Summary Judgment but was addressed in the Reply and the Sur-Reply.

finds that the applicable legal standard has been met, and therefore grants the certificate of appealability, with respect to Grounds Three and Four.  A certificate of appealability is denied as to Ground Eight.

      **IT IS SO ORDERED**.

                                      s/ Donald C. Coggins, Jr.
                                      United States District Judge

October 22, 2024
Spartanburg, South Carolina